UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


JAMES MAXWELL,

     Plaintiff,

v.                                                          Case No. 8:24-cv-2499-CPT

FRANK BISIGNANO,
Commissioner of Social Security,[1]

     Defendant.
_____/


**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of his application for Disability Insurance Benefits (DIB). (Doc. 19). For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1970, obtained at least a high school education, and has past relevant work as a truck driver. *See* (R. 272, 276). In January 2021, the Plaintiff applied for DIB, alleging disability as of May 2020 due to seizures, head pain, and problems sleeping, remembering, and concentrating. *See* (R. at 11, 18); *see also*

---

[1] Mr. Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Bisignano is substituted for the former Acting Commissioner, Mr. Leland Dudek, as the Defendant in this suit.

(Doc. 19 at 4).   The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration.  (R. 11, 152–54, 157–65).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in May 2023.  (R. 11).  The Plaintiff was represented by counsel at that proceeding and testified on his own behalf.  (R. 11, 89).  A vocational expert (VE) also testified.  (R. 101–02).

In a decision issued in July 2023, the ALJ determined that the Plaintiff (1) had not engaged in any substantial gainful activity since his alleged onset date in May 2020; (2) had the severe impairments of obesity, seizure disorder, vascular insult to the brain, degenerative disc disease of the lumbosacral spine, and neurocognitive disorder secondary to vascular insult to the brain; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[2] (4) had the residual functional capacity (RFC) to perform light work subject to various limitations;[3] and (5) based on the VE's testimony, could engage in jobs that

---

[2] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA deems considerable enough to prevent a person from performing any gainful activity.  *See* 20 C.F.R. § 404.1520(a)(4)(iii).  When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits.  *See* 20 C.F.R. § 404.1520(a)(4)(iii); *see also Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

[3] These limitations were that the Plaintiff have "the option to alternate between sitting and standing for a brief change in position every [fifteen to thirty] minutes while remaining on task;" perform only "routine and repetitive tasks . . . in a work environment [which is] free from fast-paced assembly-line type production requirements" and which "involve[es] only simple work-related decisions" with "few, if any, workplace changes;" not climb or be exposed to unprotected heights; not operate dangerous machinery or a commercial motor vehicle; and only be "occasional[ly] expos[ed] to extreme cold, extreme heat, industrial vibration, and noise level[s] above the average modern office setting[.]"  (R. 18).

exist in significant numbers in the national economy—namely, sorter, garment bagger, and ticket taker.  (R. 15–26).  In light of these findings, the ALJ concluded that the Plaintiff was not disabled.  (R. 26).

The Appeals Council denied the Plaintiff's request for review.  (R. 1). Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[4]  A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

To ascertain whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R.

---

[4] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

3

§ 404.1520(a)(4)).[5] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)). Although the claimant bears the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that he cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision disposing of the claimant's disability application after a hearing. 42 U.S.C. § 405(g). Judicial review is confined to determining whether the Commissioner applied the

---

[5] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

correct legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citations omitted). In resolving whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations. *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). Further, while a court will defer to the Commissioner's factual findings, it will not defer to his legal conclusions. *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

### III.

The Plaintiff raises two challenges on appeal: (1) the ALJ did not properly evaluate the opinions of several medical professionals who provided care to the Plaintiff; and (2) the ALJ's RFC assessment did not account for all the Plaintiff's limitations. (Doc. 19). Each of these challenges will be addressed in turn.

### A.

As noted above, the ALJ's task at step four is to determine a claimant's RFC and his ability to engage in his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To do so, the ALJ must decide, given all the pertinent evidence before her,

what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. *Id.* In rendering this determination, an ALJ must consider all medical opinions in a claimant's case record, together with the other relevant evidence. *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citation omitted).

A medical opinion is a statement from a physician or other acceptable medical source concerning what a claimant can still do notwithstanding her impairments; whether the claimant's capacity to perform various work activities is diminished; and whether the claimant can see, hear, or use her other senses or adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). A prior administrative medical finding, on the other hand, is a finding that pertains to "a medical issue made by [the SSA's f]ederal and [s]tate agency medical and psychological consultants at a prior level of review[,]" but that does not constitute an "ultimate determination about whether [the claimant is] disabled[.]" 20 C.F.R. § 404.1513(a)(5).

The Regulations governing the evaluation of medical evidence, including medical opinions and prior administrative medical findings, were amended for disability applications filed on or after March 27, 2017, as this one was. *See* 20 C.F.R. § 404.1520c; *see also Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 n.4 (11th Cir. 2021), *superseded by regulation on other grounds as stated in Glover v. Comm'r of Soc. Sec. Admin.*, 2022 WL 17826364, at *3 n.2 (11th Cir. Dec. 21, 2022). The ALJ now determines the persuasiveness of a medical opinion and a prior administrative medical

6

finding instead of generally predicating their weight on the source or consultant who offered the opinion or finding. *Compare* 20 C.F.R. § 404.1527(c) *with* 20 C.F.R. § 404.1520c. In conducting this inquiry, an ALJ must consider the following five factors: (1) supportability; (2) consistency; (3) the source or consultant's relationship with the claimant; (4) the source or consultant's area of specialization; and (5) any other germane factors "that tend to support or contradict a medical opinion" or a prior administrative medical finding, such as whether the source or consultant is familiar with the other record evidence or has "an understanding of [the SSA's] disability program's policies and evidentiary requirements." *Id.* § 404.1520c(c); *see also Nixon v. Kijakazi*, 2021 WL 4146295, at *3 (M.D. Fla. Sept. 13, 2021) (citation omitted).

Of these factors, supportability and consistency are the most important. *See* 20 C.F.R. § 404.1520c(b)(2); *see also Nixon*, 2021 WL 4146295, at *3 (citation omitted). Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering his own opinion or finding, while consistency deals with whether a medical source or consultant's opinion or finding comports with other evidence in the record. *See* 20 C.F.R. §§ 404.1520c(c)(1)–(2); *see also Vachon v. Comm'r of Soc. Sec.*, 2022 WL 458604, at *4 (M.D. Fla. Feb. 15, 2022); *Barber v. Comm'r of Soc. Sec.*, 2021 WL 3857562, at *3 (M.D. Fla. Aug. 30, 2021) (citation omitted). The amended Regulations require that an ALJ discuss supportability and consistency but do not mandate that she describe how she evaluated the other three factors. *See* 20

C.F.R. § 404.1520c(b)(2); *see also Freyhagen v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citation omitted).

In addressing the supportability and consistency factors, an ALJ need not employ any "magic words" or explicitly use the terms "supportability" and "consistency." *Davis v. Comm'r of Soc. Sec.*, 2025 WL 1123853, at *5 (11th Cir. 2025) (citing 20 C.F.R. §§ 404.1520c(c)(1), (2); *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1276 n.14 (11th Cir. 2024)) (internal quotation marks omitted). An ALJ also need not set forth the basis for her supportability and consistency findings in the same part of her decision as the rest of her persuasiveness discussion. *See Vachon v. Comm'r of Soc. Sec.*, 2022 WL 458604, at *6 (M.D. Fla. Feb. 15, 2022) (deeming the ALJ's consistency analysis to be sufficient despite it "being separate from the rest of the [ALJ's] persuasiveness evaluations") (citation omitted); *Roussin v. Comm'r of Soc. Sec.*, 2021 WL 6205948, at *9 (M.D. Fla. Dec. 16, 2021) (finding "that the ALJ did not err in broadly referencing the general findings that he determined to be inconsistent with the opinion [at issue] because the ALJ had thoroughly discussed the findings of [the claimant's] treating providers earlier in the same decision"), *report and recommendation adopted*, 2022 WL 19698 (M.D. Fla. Jan. 3, 2022). Instead, an ALJ need only "state[ in her decision] with at least some measure of clarity the grounds" why she assigned "weight to medical opinions or the reasons . . . [why she] discount[ed] them." *Raper*, 89 F.4th at 1276 n.14 (internal quotation marks, brackets, and citation omitted). On appeal, an ALJ's persuasiveness determination will be upheld as long as the reviewing court can

engage in "a meaningful review and determine whether substantial evidence supports the ALJ's [determination.]" *Coleman v. Comm'r of Soc. Sec.*, 2026 WL 191806, at *6 (M.D. Fla. Jan. 26, 2026) (citation omitted); *see also Kantor v. Kijakazi*, 2022 WL 10624512, at *6 (M.D. Fla. Mar. 30, 2022).

The Plaintiff's first challenge here centers on the ALJ's evaluation of the assessments made by six of the Plaintiff's healthcare providers: Dr. Uma Chelvan, Dr. Robert Fields, Dr. Paul Sporn, Dr. Volney Sheen, Nurse Jamie Burns, and Dr. Nicholas Pantelis. (R. 22–23); *see* (R. 132–37, 143–50). The gist of the Plaintiff's claim of error is that in weighing the persuasiveness of these providers' assessments, the ALJ "either confuse[d] supportability with consistency or vice-versa, fail[ed] to discuss both supportability and consistency, or neither discusse[d] supportability nor consistency." (Doc. 19 at 7). The Plaintiff insists that due to the ALJ's purported mishandling of this evidence, remand is necessary. *Id*.

The first of the providers, Dr. Chelvan, is a state agency physician who reviewed the available evidence in April 2021 and found that the Plaintiff had the exertional capacity for light work, could not climb ladders/ropes/scaffolds, could frequently perform all other postural maneuvers, and should avoid concentrated exposure to extreme temperatures and workplace hazards. (R. 121–24); *see* (R. 22). In her decision, the ALJ deemed Dr. Chelvan's prior administrative findings to be "generally persuasive" because they were "supported and consistent with the overall medical evidence of record at the time." (R. 22). The ALJ recognized, however, that "Dr.

Chelvan did not have the benefit of the evidence showing degenerative disc disease in the [Plaintiff's] lumbar spine," which the ALJ ultimately determined "substantiate[d] a more restrictive [RFC]." *Id.*

The Plaintiff now asserts that the ALJ "did not provide the requisite level of articulation" in addressing the supportability and consistency factors relative to Dr. Chelvan's opinion. (Doc. 13 at 7). The Court need not resolve this contention, however, because even assuming the Plaintiff is correct, he does not demonstrate that any such alleged error by the ALJ prejudiced him. As noted above, the ALJ imposed functional limitations that were more demanding than the ones Dr. Chelvan proposed. Accordingly, any error that the ALJ committed in analyzing Dr. Chelvan's assessments was harmless. *See Pons v. Comm'r of Soc. Sec.*, 2022 WL 1214133, at *1–2 (11th Cir. 2022) (concluding that the ALJ's failure to credit a medical opinion amounted to harmless error and emphasizing that the Eleventh Circuit has "applied the harmless error rule to social security appeals"); *Whitten v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 791, 793 (11th Cir. 2019) ("If the ALJ commits an error that does not affect the outcome, it's harmless and doesn't require reversal or remand."); *Miller v. Barnhart*, 182 F. App'x 959, 960 (11th Cir. 2006) ("[W]hen an incorrect application of the [R]egulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.") (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)); *Rodriguez v. Comm'r of Soc. Sec.*, 2024 WL 5338647, at *3–4 (M.D. Fla. July 23, 2024) (ruling that the ALJ's failure to address

the supportability and consistency factors was harmless because the ALJ adopted "more restrictive limitations" based on additional evidence at the hearing level) (citations omitted).[6]  The Plaintiff's quarrel with the ALJ's evaluation of Dr. Chelvan's opinion therefore fails.

The Plaintiff next directs his focus on the ALJ's assessments of Drs. Field and Sporn, both of whom are medical consultants, arguing that the ALJ did not discuss supportability in examining the persuasiveness of these consultants' prior administrative medical findings.  (Doc. 19 at 7–8).  Dr. Fields found that the Plaintiff could engage in medium work, with restrictions on climbing and exposure to workplace hazards.  (R. 22); *see* (R. 132–37).  Dr. Sporn, by contrast, determined that the Plaintiff could perform work at all exertional levels, but that the Plaintiff's obesity prevented him from climbing and restricted him to only occasional postural maneuvers.  (R. 22); *see* (R. 143–50).  Dr. Sporn also recommended environmental limitations as seizure "precautions" and to account for the Plaintiff's weight issues. (R. 147).

In her decision, the ALJ discounted Drs. Fields and Sporn's prior administrative medical findings on the ground that they were too lax, explaining that, like Dr. Chelvan, Drs. Fields and Sporn "were not privy to [subsequent evidence] . . .  that

---

[6] In an attempt to counter this harmless error analysis, the Plaintiff argues in his reply brief that the ALJ's failure to properly assess a provider's opinion is itself a harm necessitating remand. (Doc. 26 at 3).  The Plaintiff, however, conspicuously does not cite any case authority to bolster this contention.

confirmed the [Plaintiff's] lumbar spine degenerative disc disease." (R. 22). In the end, as noted above, the ALJ incorporated greater limitations in her RFC than those propounded by the two consultants, including a restriction to light work. (R. 22).

The Plaintiff now contends that "the ALJ's analysis [of Dr. Fields and Dr. Sporn's assessments] lacks any discussion of supportability." (Doc. 19 at 7–8). Given the heightened limitations adopted by the ALJ, however, the Plaintiff's objection to the ALJ's evaluation of the consultants' determinations fails as well. Even assuming the Plaintiff is correct, he again does not explain how he was harmed by the ALJ's supposed error. *Pons*, 2022 WL 1214133, at *1–2; *Whitten*, 778 F. App'x at 793; *Miller*, 182 F. App'x at 960; *Rodriguez* 2024 WL 5338647, at *3–4.

The Plaintiff next takes issue with the ALJ's treatment of Dr. Sheen's findings. (Doc. 19 at 8). Dr. Sheen opined that the Plaintiff could not drive a commercial vehicle through at least November 2020, while the Plaintiff was being monitored to ensure that his seizures were under control. (R. 394–96); *see* (R. 22). The ALJ construed Dr. Sheen's assessment in the light most favorable to the Plaintiff and imposed a restriction precluding the Plaintiff from operating a commercial vehicle. (R. 22). The ALJ then included this limitation in her RFC (R. 18), noting it was consistent with evidence that the Plaintiff had a prior brain bleed and experienced a seizure while driving his propane truck (R. 22).

The Plaintiff now contends that the ALJ erred by not separately evaluating the supportability of Dr. Sheen's driving restriction. (Doc. 19 at 8). The fatal flaw with

12

this line of argument, as before, is that even assuming the ALJ's persuasiveness discussion is lacking, the Plaintiff does not establish how the ALJ's allegedly deficient analysis constitutes anything more than harmless error. *Pons*, 2022 WL 1214133, at *1–2; *Whitten*, 778 F. App'x at 793; *Miller*, 182 F. App'x at 960; *Rodriguez* 2024 WL 5338647, at *3–4. Indeed, as the Commissioner highlights, the ALJ's crediting of Dr. Sheen's opinion "only strengthened [the Plaintiff's] disability claim by ruling out his past work and narrowing the universe of suitable jobs." (Doc. 25 at 13–14).

The Plaintiff next challenges the ALJ's handling of Nurse Burns's statements in a "Seizures [RFC] Questionnaire" that she completed for the Plaintiff in May 2023. (Doc. 19 at 8–9); (R. 540). In that form, Nurse Burns noted that although the Plaintiff had a seizure in October 2022, he generally averaged no seizures each week and each month. (R. 542–43). She also observed that while the Plaintiff experienced confusion, fatigue, weakness, short-term memory changes, insomnia, and mood changes, he was "currently stable [and] able to perform . . . [activities of daily living.]" (R. 544); *see* (R. 22). Nurse Burns commented as well that the Plaintiff was capable of working with heavy machinery and driving a motor vehicle, did not require special supervision, did not need unscheduled breaks, and would miss work less than once a month. (R. 545–47).

In her decision, the ALJ found persuasive Nurse Burns's notations regarding the frequency of the Plaintiff's seizures, the Plaintiff's bouts with confusion, and the Plaintiff's stability and capacity to engage in daily living activities. (R. 22). The ALJ

determined that these statements were "supported by and consistent with the results" of a neurological assessment conducted by Nurse Burns in May 2023. *Id*. The ALJ did not find persuasive, however, Nurse Burns's observations about the Plaintiff's "memory problems" because the ALJ deemed them to be "controverted by [Nurse Burns's] own evaluation findings that [the Plaintiff] was alert and oriented in three spheres with intact (3/3) immediate recall and after five minutes." (R. 22–23).

The Plaintiff now asserts that the ALJ failed to address the consistency factor relative to Nurse Burns's statements. (Doc. 19 at 9). This argument suffers from the same defect as the Plaintiff's above challenges, insofar as the Plaintiff fails to show prejudice.[7] *Pons*, 2022 WL 1214133, at *1–2; *Whitten*, 778 F. App'x at 793; *Miller*, 182 F. App'x at 960; *Rodriguez* 2024 WL 5338647, at *3–4; *Martin*, 2023 WL 2838075, at *9 n.7. In fact, as the Commissioner points out, the ALJ's finding that the Plaintiff should not operate dangerous machinery is "more favorable to [the] Plaintiff than Nurse Burns's remark that he could . . . [engage in this activity] despite his seizures and any medication side effects." (Doc. 25 at 14); *compare* (R. 18) *with* (R. 542–47).

Lastly, the Plaintiff contests the ALJ's evaluation of the assessments rendered by Dr. Pantelis, a primary care physician who started caring for the Plaintiff in December 2022. *See* (R. 561). In May 2023, Dr. Pantelis opined in a medical source statement that, among other things, the Plaintiff could not avoid ordinary hazards or

---

[7] The Court presumes for the sake of argument that Nurse Burns's observations qualify as medical opinions despite the fact that even the Plaintiff acknowledges that this assumption is "questionable." (Doc. 19 at 8).

read fine print due to "vision changes" caused by back pain; could occasionally drive a motor vehicle and tolerate moderate noise; could not be exposed to other hazards or environmental conditions; would miss three or more days of work per month; and was "unable to focus on tasks" due to a memory impairment. (R. 535–37).  Notably, Dr. Pantelis did not attempt to reconcile these and other proposed restrictions with his treatment documentation, which indicated that the Plaintiff was generally doing well and showed no appreciable sign of physical or mental impairment during his examinations.  (R. 552–76).

In her decision, the ALJ found Dr. Pantelis's opinion unpersuasive because "it [wa]s not consistent with or supported by his own treatment records or examinations." (R. 23).  By way of example, the ALJ observed:

> Dr. Pantelis'[s] notation that the [Plaintiff] ha[d] visual limitations and c[ould] not avoid hazards in the workplace [wa]s not supported by any objective medical examination findings by any of the [Plaintiff's] treating providers. . . .  [T]here [wa]s NO evidence of visual changes in the record, including in Dr. Pantelis'[s] own treatment records, which show[ed] that on the same day he completed the medical source statement, he noted that the "Pt [wa]s doing well and ha[d] no concerns at this time;" in the review of systems, the [Plaintiff's] eyes were negative for redness and visual disturbance[.]

(R. 23).  Notwithstanding the ALJ's reservations regarding a number of Dr. Pantelis's assessments, the ALJ formulated an RFC that accommodated the deficits Dr. Pantelis referenced, including limitations that the Plaintiff not climb, not be exposed to unprotected heights, and not operate dangerous machinery.  (R. 18, 23).

15

The Plaintiff now argues—at least in his initial memorandum—that the ALJ "failed to address consistency as it pertains to Dr. Pantelis' opinion." (Doc. 19 at 9).[8] This assertion is simply wrong.   In addition to providing a "rather cogent supportability analysis," as the Plaintiff herself concedes, *id.*, the ALJ determined in her decision that Dr. Pantelis's visual and environmental restrictions were "not supported by any objective medical examination findings by any of the [Plaintiff's] *treating providers*." (R. 23) (emphasis added).  While it is true that the ALJ utilized the phrase "not supported by" rather than "is inconsistent with," her juxtaposition of Dr. Pantelis's opinions with the objective evidence from other medical professionals is the touchstone of the consistency factor.  *See Frye v. Comm'r of Soc. Sec.*, 2022 WL 1045719, at *5 (M.D. Fla. Apr. 7, 2022) ("The ALJ may not have used the word 'supportability,' but he discussed the record with respect to the inconsistency of the opinions within the physician's own records, and the [c]ourt finds that to be adequate.") (citation omitted); *see also Barber v. Soc. Sec. Admin.*, *Comm'r*, 2024 WL 1201850, at *4 (N.D. Ala. Mar. 20, 2024) ("The ALJ need not address supportability and consistency through separate analyses so long as she attends to the substance of both factors.").  As a result, the ALJ's discussion sufficiently articulated a consideration of both supportability and consistency, even though she "might not have been explicit with her use of the relevant

---

[8] The Plaintiff seemingly back tracks from this contention is his reply brief, stating that "[w]hether what the ALJ discussed regarding consistency of visual changes is sufficient for an overall consistency analysis for Dr. Pantelis['s] entire opinion is something this [C]ourt will need to address." (Doc. 26 at 5).

terms[.]" *Davis*, 2025 WL 1123853, at \*5.  In short, the Plaintiff's objection to the ALJ's evaluation of Dr. Pantelis's opinion is meritless.

B.

The Plaintiff's second challenge—as referenced previously—is that the ALJ erred by not adopting certain limitations proposed by Dr. Chelvan as part of the ALJ's RFC determination.  (Doc. 19 at 11).  Specifically, the Plaintiff argues that the ALJ improperly omitted Dr. Chelvan's proposed restrictions that the Plaintiff could only "stand and/or walk for about [six] hours in an [eight]-hour workday," could only "sit about [six] hours in an [eight]-hour workday," and "could only frequently balance, stoop, kneel, crouch, and crawl." *Id*. at 12 (citing R. 122).[9]  The Plaintiff asserts that since the ALJ found Dr. Chelvan's opinion "generally persuasive, she at least owed [the] Plaintiff some explanation as to why the entirety of Dr. Chelvan's opinion was not incorporated into the [RFC]" and that the ALJ's failure to provide such an explanation wholly undermines the ALJ's disability determination. *Id*.  The Plaintiff also asserts that the ALJ's decision is further undercut by the fact that the ALJ did not include Dr. Chelvan's above restrictions in the ALJ's hypotheticals to the VE.  *Id*. (citing R. 102).  The Plaintiff's second claim of error is unavailing.

It is well settled that an ALJ is not required to expressly discuss every piece of evidence in her decision.  *See Stowe v. Soc. Sec. Admin., Comm'r*, 2021 WL 2912477, at

---

[9] It bears mentioning that the ALJ incorporated many of Dr. Chelvan's proffered limitations into her RFC, such as no climbing and avoiding constant exposure to extreme temperatures.  (R. 18, 22).

17

*5 (11th Cir. July 12, 2021) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)) (internal quotation marks omitted).  Instead, the ALJ need only predicate her RFC finding on the claimant's condition "taken as a whole," *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (citations omitted), after evaluating all the material information presented, 20 C.F.R. §§ 404.1520(e), 404.1545(a).  As long as the Court can ascertain from the ALJ's decision that she took into account all the relevant evidence, the final responsibility for deciding a claimant's RFC rests with the ALJ.  *Id.*

The ALJ readily crosses this threshold here.  As is apparent from a review of the ALJ's decision, the ALJ considered the entirety of the record in arriving at her RFC determination, including the assessments of all the above providers, the objective medical evidence, and the Plaintiff's subjective complaints.  *See, e.g.,* (R. 22–24, 116–127, 357–88, 389–448, 449–58).  For instance, with respect to the Plaintiff's seizures which the Plaintiff claimed precluded him from working, the ALJ noted Nurse Burns's observation about the wholesale lack of such seizures dating back to around seven months before Nurse Burns's examination of the Plaintiff.  (R. 22, 543).  The ALJ also noted other treatment records indicating that the Plaintiff's reports of seizure symptoms did not cohere with objective medical examinations.  (R. 20, 602–05).  In addition, the ALJ referenced records from a medical institution, Beth Israel Deaconess Medical Center, which demonstrated that the Plaintiff's seizure symptoms were

effectively controlled by anti-epileptic medication, with "good results and no adverse side effects." (R. 19) (citing R. 357–88, 389–448).

Along with this evidence, the ALJ examined treatment records from the Plaintiff's medical visits that reflected his mental status examinations were "normal," that there were no "signs of any formal thought or mood disorder," that his memory and attention were "otherwise intact," and that he exhibited "normal mood and behavior." (R. 21). The ALJ emphasized as well that the Plaintiff's treating providers never "restrict[ed] his activities of daily living in any manner, other than not being able to drive as a seizure precaution." *Id*. The ALJ observed too that "the [Plaintiff] ha[d] not sought nor received regular outpatient mental health counseling or treatment, and [that] he ha[d] not been hospitalized due to psychiatric-based symptoms." *Id*.

In sum, the ALJ considered the totality of the pertinent information before her and crafted an RFC based on the Plaintiff's condition taken as a whole that is supported by substantial evidence. *Biestek*, 587 U.S. at 103; *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (citation and internal quotation marks omitted).

Contrary to the Plaintiff's assertions, the fact that the ALJ did not mention the above restrictions recommended by Dr. Chelvan does not alter this analysis. To start, the ALJ found Dr. Chelvan's opinions to be only "generally" persuasive and deemed

19

a more-restrictive RFC to be warranted to account for the Plaintiff's back condition. (R. 22). To that end, as mentioned at the outset, the ALJ added a sit/stand option that would allow the Plaintiff to change position every fifteen to thirty minutes. (R. 18). Accordingly, the Plaintiff is incorrect insofar as she suggests that the ALJ excluded Dr. Chelvan's "standing, walking, sitting" limitations from the RFC without explanation. (Doc. 19 at 12–13).

Furthermore, for the reasons detailed by the Commissioner in his brief, Dr. Chelvan's postural limitations are irrelevant with respect to the Plaintiff's challenge because all the light jobs supporting the ALJ's step-five finding require no more than occasional stooping and no balancing, kneeling, crouching or crawling. (R. 25–26, 102–03); *see* U.S. Dep't of Labor, Dictionary of Occupational Titles (DOT) (4th ed. rev. 1991), § 361.687-014 (sorter), 1991 WL 672991 (stating as follows: "Stooping: Occasionally—Exists up to [one third] of the time;" Balancing, Kneeling, Crouching, Crawling: "Not Present—Activity or condition does not exist"); DOT § 920.687-018 (garment bagger), 1991 WL 687965 (same); DOT § 344.667-010 (ticket taker), 1991 WL 672863 (requiring none of the relevant postural activities).

And finally, even if the ALJ did err in not incorporating Dr. Chelvan's proposed limitations in her RFC determination, any such an error was harmless since—as

described previously—the ALJ adopted more stringent limitations than those put forth by Dr. Chelvan.[10]

The Plaintiff's remaining contention regarding the ALJ's queries to the VE similarly fails.  Even assuming that the ALJ made a mistake in composing his hypotheticals to the VE and even assuming that mistake was material, the Eleventh Circuit has applied a harmless error analysis to such matters.  *See Carter v. Comm'r of Soc. Sec.*, 411 F. App'x 295, 298 (11th Cir. 2011) ("Although the hypothetical did not specifically reference [a plaintiff's medical issue] . . .  if this was error, that error was harmless."); *Battle v. Astrue*, 243 F. App'x 514, 522 (11th Cir. 2007) (noting that, within the VE hypothetical context, "[e]rrors may be harmless if they do not prejudice the claimant") (citing *Diorio*, 721 F.2d at 728)).  As a result, the Plaintiff must establish that his challenge to the ALJ's hypothetical, if meritorious, prejudices him.  *See* (Doc. 19 at 12–13); (Doc. 26 at 6–7).  He does not do so.

The Plaintiff's reliance on *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214 (11th Cir. 2001) in this regard is misplaced.  Unlike the Plaintiff here, the claimant in *Vega* demonstrated prejudice by identifying gaps in the ALJ's hypothetical to the VE which

---

[10] Put another way, the regulatory definition of "light work" appears to include Dr. Chelvan's restrictions that the Plaintiff can stand and/or walk for about six hours in an eight-hour workday and can sit for no more than six hours in an eight-hour workday.  Soc. Sec. Ruling 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately [six] hours of an [eight]-hour workday.  Sitting may occur intermittently during the remaining time.").  The fact that the ALJ adopted an RFC involving light work *with* additional restrictions thus demonstrates that any error she may have committed was harmless.  (R. 18).

could have significantly bolstered her contention that she was "[u]nab[e] to perform" the work the ALJ outlined in his RFC. *Vega,* 26 5 F.3d at 1220.

IV.

In light of all the above, it is hereby ORDERED:

1.      The Commissioner's decision is affirmed.

2.      The Clerk is directed to enter Judgment in the Defendant's favor and to close the case.

SO ORDERED in Tampa, Florida, this 30th day of March 2026.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record